UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-23069-CIV-ALTONAGA/Damian

**JOEL BENES**, *et al.*,

    Plaintiffs,

v.

**LUIS DE LA AGUILERA**, *et al.*,

    Defendants.

_____/

**ORDER**

    **THIS CAUSE** came before the Court on Plaintiffs, Joel Benes, John McClure, and Daniel Valdes's Motion for Remand [ECF No. 13], filed on August 25, 2023. Defendants filed a Response [ECF No. 18], to which Plaintiffs filed a Reply [ECF No. 19]. The Court has carefully reviewed the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted.

**I. BACKGROUND**

    This is an action for damages, declaratory relief, and equitable relief in connection with the alleged mismanagement of U.S. Century Bank ("the Bank"). (*See generally* Notice of Removal, Ex. A, Class Action Complaint [ECF No. 1-2] 2–27).[1] The Bank is a corporation registered in the State of Florida. (*See* Resp., Ex. 2, Form 8-K [ECF No. 18-2] ("Form 8-K") 2). Plaintiffs are former shareholders of the Bank who reside in Miami-Dade County, Florida. (*See* Compl. ¶¶ 8–11). Defendants are or were members of the Bank's Board of Directors ("the Board") and reside in New York and Florida. (*See id.* ¶¶ 12–17).

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

In 2009, during the Great Recession, the Bank received an over $50 million investment from the United States Department of Treasury. (*See id.* ¶¶ 26–28). As part of the agreement, the Board "authorize[d] one million shares of preferred stock to be issued in one or more classes" and, subsequently, amended the Bank's Articles of Incorporation to create two series of preferred stock. (*See id.* ¶¶ 29–30 (alteration added)). The amendments stated that holders of these preferred stock shares had "no right to exchange or convert such shares into any other securities." (*Id.* ¶ 31).

In 2015, the Bank recapitalized with a $65 million investment from seven private equity funds (the "Private Equity Funds"), who — as part of an agreement with the Department of Treasury — purchased the preferred stock previously issued in 2009. (*See id.* ¶¶ 36–37). Some of the Private Equity Funds also "agreed to a series of restrictions on the degree of control that they would exercise over the Bank[.]" (*Id.* ¶ 39 (alteration added)). The Bank's founding "Legacy Shareholders[,]" including Plaintiffs, voted to approve the recapitalization, which left them with "approximately 38% of the Bank's common equity and approximately 50% of the voting common stock" and guaranteed them "a *pro rata* portion of the proceeds" if the Bank was sold. (*Id.* ¶ 35 (alteration added)).

Following the recapitalization, the Legacy Shareholders amended the Articles of Incorporation to establish seven classes of stock: two classes of common stock (Class A voting stock, and Class B non-voting stock), and five classes of preferred stock (Classes A, B, C, D, and E). (*See id.* ¶¶ 40–42). The amendments gave two of the private equity funds the right to appoint Board members (*see id.* ¶ 46); limited the rights of certain preferred shareholders to redeem, repurchase, or convert their shares (*see id.* ¶¶ 50–53); and "authorize[d] the directors to create new classes of preferred stock and to create certain rights, including conversion rights, for the new classes" (*id.* ¶ 54). According to Plaintiffs, however, the Board was not authorized to "engage in

2

transactions to exchange or convert the existing classes of preferred stock into voting or non-voting common stock." (*Id.* (citation omitted)).

Despite these restrictions, the Board "attempted to engage in a conversion of preferred stock to common stock" in 2018. (*Id.* ¶ 55). "Such an exchange would increase the percentage of voting common stock held by the Private Equity Funds[,]" and, because of the ways that such stock would be redeemed after a sale, allowed "the Board [to] arrange a sale of the Bank that was more profitable for the Private Equity Funds." (*Id.* ¶¶ 55, 57 (alterations added)). Several Legacy Shareholders filed an action in state court to block the conversion, resulting in temporary injunctions. (*See id.* ¶ 59). The injunctions were eventually dissolved, and the case was dismissed in May 2020. (*See id.*).

Subsequently, in 2021, the Bank undertook what became known as the "Exchange Transaction" — "a series of transactions and communications that, among other things, converted non-voting shares to voting shares, to the severe financial and representative detriment of Plaintiffs." (*Id.* ¶¶ 2, 60–80 (quotation marks omitted)). On May 28, 2021, the Bank's President — one of the Defendants — distributed an "Offer to Exchange" that would allow Class C and D preferred shareholders to exchange their stock for Class A common stock. (*See id.* ¶ 62 (citation omitted)). "[A]ny untendered preferred stock" would be redeemed for cash. (*Id.* ¶ 64 (alteration added; citation omitted)). The offer's stated purpose was to "creat[e] a more simplified capital structure" and facilitate an initial public offering. (*Id.* ¶ 65 (alteration added; quotation marks and citation omitted))). It also indicated that the value of Class A common stock would experience "immediate and substantial dilution[,]" with "further dilution" possible. (*Id.* ¶¶ 66–67 (alterations added; quotation marks, citations, and emphasis omitted)). Because the Legacy Shareholders held nearly 10 million shares of Class A common stock, the offer "resulted in the

3

dilution of over two-thirds of the value of the Legacy Shareholders' common stock and voting power[.]" (*Id.* ¶ 69 (alteration added)). Defendants ultimately approved the Exchange Transaction. (*See id.* ¶ 71).

On June 24, 2021, two shareholders sought preliminary and permanent injunctive relief in this District. *See Rasco v. Wycoff*, No. 21-cv-22325, Complaint for Injunctive Relief [ECF No. 1] 1, filed June 24, 2021 (S.D. Fla. 2021). Defendants moved to dismiss, arguing that the action "present[ed] the proverbial forcing of a round peg into a square hole" and that in fact no federal jurisdiction existed. *Id.*, Defendants' Joint Motion to Dismiss [ECF No. 20] ("*Rasco* MTD") 7, filed August 18, 2021 (alteration added). The shareholders eventually voluntarily dismissed the case. *See id.*, Order of Dismissal Without Prejudice [ECF No. 22], filed Sept. 2, 2021.

On July 6, 2023, Plaintiffs filed a complaint in this Court, which the Undersigned dismissed without prejudice as a shotgun pleading. *See Benes v. de la Aguilera*, No. 23-cv-22488, Order [ECF No. 4] ("*Benes* Order") 1–2, filed July 6, 2023 (S.D. Fla. 2023). Rather than submit an amended complaint, Plaintiffs "concluded that the Court lacks subject matter jurisdiction over this matter." *Id.*, Notice in Response to Court's July 6, 2023 Order [ECF No. 5] ("*Benes* Notice") 1, filed July 13, 2023. Plaintiffs explain that they realized their class "was composed almost exclusively of Florida citizens[.]" (Mot. 2 (alteration added)).

On July 13, 2023, Plaintiffs commenced the present action in state court. (*See* Compl. 26). Plaintiffs allege that the Exchange Transaction was "[m]otivated by self-interest" (*id.* ¶ 60 (alteration added)); benefited the Private Equity Funds at Plaintiffs' expense (*id.* ¶¶ 32–39, 60); and resulted in "a harm suffered only by [Plaintiffs] and the putative class." (*Id.* ¶ 69 (alteration added)). Plaintiffs also allege that the Exchange Transaction violated the Bank's Articles of Incorporation (*see id.* ¶ 76); was an *ultra vires* act (*see id.* ¶¶ 77, 79, 95–103); and was a breach of

4

Defendants' fiduciary duties to Plaintiffs and the putative class (*see id.* ¶¶ 104–110). Plaintiffs request class certification; a declaration that the Exchange Transaction was *ultra vires*; a damages award "in an amount to be proven at trial"; interest; attorney's fees and costs; and "any further and different relief as this case may require or as determined by this Court to be just, equitable, and proper under the circumstances." (*Id.* 26–27).

On August 14, 2023, Defendants removed the action based on Class Action Fairness Act ("CAFA") diversity jurisdiction. (*See* Notice of Removal ¶¶ 4, 19 (citing 28 U.S.C. §§ 1332, 1453)). Plaintiffs now seek remand, arguing that the case "falls squarely within the internal affairs exception to CAFA jurisdiction." (Mot. 4). Defendants disagree, insisting "this case is far more than what Plaintiffs now describe [] and far more than it was when it was originally filed[.]" (Resp. 1 (alterations added; footnote call number omitted)). The Court finds that the exception applies and thus remands the case to state court.

## II. LEGAL STANDARDS

Under 28 U.S.C. section 1332(d)(2), district courts possess original jurisdiction over class actions in which at least one plaintiff and one defendant are citizens of different states and the amount in controversy exceeds $5,000,000. The statute also delineates exceptions to this jurisdiction. *See id.* § 1332(d)(5), (9). Most relevant to this case, jurisdiction does not extend

> to any class action that solely involves a claim . . . that relates to the internal affairs of governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized[.]

*Id.* § 1332(d)(9)(B) (alterations added). This exception is known as the "internal affairs" exception, and it boils down to two requirements: to come within the exception, a class action must "*solely* involve[] a claim (1) that relates to corporate internal affairs; *and* (2) that arises under the laws of the state where the company is incorporated." *Krueger v. Nw. Mut. Life Ins. Co.*, No. 10-

5

cv-00128, 2010 WL 4677382, at *2 (N.D. Fla. Nov. 9, 2010) (alteration added; citing 28 U.S.C. § 1332(d)(9)(B); emphases in original).

Parties invoking statutory exceptions to jurisdiction "bear the burden of showing that at least one of the exceptions [] appl[ies]." *Hunter v. City of Montgomery*, 859 F.3d 1329, 1335 (11th Cir. 2017) (alterations added; citations omitted). Generally, courts should strictly construe the requirements of removal jurisdiction and remand all cases in which such jurisdiction is doubtful, *see Shamrock Oil v. Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941), but "[u]nlike in ordinary cases, there is no presumption against removal in CAFA cases[,]" *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (alterations added; citation omitted). Rather, the Eleventh Circuit has described CAFA's grant of jurisdiction as "broad . . . with only narrow exceptions." *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) (alteration added; citation omitted).

### III. DISCUSSION

Plaintiffs argue that this case "falls squarely into the internal affairs exception" because their claims are between shareholders and directors and arise entirely under Florida law. (Mot. 4–5). Defendants disagree. (*See generally* Resp.). The Court first addresses the requirements of the exception and then turns to Defendants' arguments.

A.   **The Internal Affairs Exception**

At the outset, the Court notes that Plaintiffs' claims indeed fit neatly with claims that have been held to come within the internal affairs exception. "The fiduciary duties owed to a corporation by its officers and directors concern the internal affairs of a corporation." *Mukamal v. Bakes*, 378 F. App'x 890, 896 (11th Cir. 2010) (citations omitted). "In addition, the issuance or redemption of stock qualifies as an 'internal affair' of the corporation[.]" *100079 Canada, Inc. v. Stiefel Lab'ys, Inc.*, No. 11-22389-Civ, 2011 WL 13116079, at *9 (S.D. Fla. Nov. 30, 2011)

(alteration added; citations omitted); *see also Becher v. Nw. Mut. Life Ins. Co.*, No. 10-cv-6264, 2010 WL 5138910, at *2 (C.D. Cal. Dec. 9, 2010) ("Claims involving breach of fiduciary duties are routinely considered 'internal affairs,' as are claims related to the declaration and payment of dividends[.]" (alteration added; citations omitted)).

Here, all of Plaintiffs' claims revolve around stock transactions that allegedly exceeded Defendants' authority and breached their fiduciary duties. (*See generally* Compl.). Plaintiffs target the "conversion or exchange" of certain preferred stocks, which they allege was not permitted "absent common shareholder approval." (*Id.* ¶ 72). They further allege that these actions favored other shareholders while "dilut[ing] the value" of the Legacy Shareholders' holdings. (*Id.* ¶ 79 (alteration added)). These are the kinds of claims that concern a corporation's internal affairs — that is, "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders[.]" *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (alteration added; citation omitted).

Determining the nature of the claims is only the first step. The Court must also consider whether the claims arise solely "under the laws of the state where the company is incorporated." *Krueger*, 2010 WL 4677382 at *2 (citing 28 U.S.C. § 1332(d)(9)(B)). In this case, the Bank is a corporation registered in Florida (*see* Form 8-K 2), and all of Plaintiffs' claims are premised on violations of Florida law (*see, e.g.*, Compl. ¶¶ 3, 18, 20, 77, 103). Defendants do not dispute this prong. (*See generally* Resp.). This second requirement is therefore met, as well.

### B. Defendants' Arguments

Although the internal affairs exception would seem to apply, Defendants argue that Plaintiffs have not met their burden on the first prong, because their claims involve former directors and shareholders, and the exception only applies "to matters between *current* officers, directors,

and shareholders." (Resp. 10 (citing *Edgar*, 457 U.S. at 645; emphasis in original)). They also argue that remand is inappropriate "because the relief Plaintiffs seek would broadly affect the public market and interstate commerce, including significant non-Florida market actors[.]" (Resp. 13 (alteration added)). The Court addresses each argument in turn, finding neither persuasive.

***Current v. former shareholders***. The Supreme Court has defined "internal affairs" as "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders[.]" *Edgar*, 457 U.S. at 645 (alteration added). Defendants insist this excludes former directors and shareholders. (Resp. 10–13). They cite to several cases, including a Southern District of Illinois case in which the court reached the same conclusion. (*See* Resp. 11–12 (citing *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 337 (4th Cir. 2019); *LaPlant v. Nw. Mut. Life Ins. Co.*, 701 F.3d 1137, 1140 (7th Cir. 2012); *Sudholt v. Country Mut. Ins. Co.*, No. 22-cv-3064, 2023 WL 4181194, at *8 (S.D. Ill. June 26, 2023); *Speaks v. U.S. Tobacco Coop.*, 324 F.R.D. 112, 129–30 (E.D.N.C. 2018))).

Defendants' cases do not stand for the proposition that former directors or shareholders are excluded from the internal affairs exception. While Defendants do cite one case in which a court rejected the internal affairs exception because former shareholders were involved, that case dealt with a proposed class that "include[d] all individuals and entities, including heirs and assigns, who are, or were at any time, members of the [corporation] during the class period that dates back to June 1, 1946." *Speaks*, 324 F.R.D. at 129–30 (alterations added; citation omitted). The proposed class here is not nearly so broad; it is limited to "Florida citizens that were holders of Class A voting common stock . . . at the time of the conversion of Class C and Class D preferred stock to Class A voting common stock." (Compl. ¶ 82 (alteration added)). The court in *Speaks* also separately found that "the claims . . . would require resolving important questions of federal law"

8

and therefore did not "arise under the laws of the state by which the organization [wa]s governed." *Speaks*, 324 F.R.D. at 130 (alterations added; citations omitted). There is no similar issue here.

Defendants' other cases are no more helpful. In *Dominion Energy*, the situation was reversed from the facts of this case. There, the court concluded that petitioners "were outsiders to the internal affairs and governance" of the corporation at the time of the challenged action and only became involved in "internal affairs" after the fact, not — as Defendants argue here — that they became outsiders by leaving their positions after the challenged action occurred. 928 F.3d at 337. Even further afield, in *LaPlant*, the court concluded that petitioners were not "entitled . . . to a role in [the corporation's] governance" and thus "not shareholders" at all. *LaPlant*, 701 F.3d at 1140 (alterations added)). In other words, the petitioners in both cases were not involved in internal affairs at the time of the challenged actions, and the exception therefore did not apply. In this case, Plaintiffs and Defendants were all involved in internal affairs at the time of the Exchange Transaction. (*See* Compl. ¶¶ 8–17).

As Defendants note, at least one court has agreed with them that the internal affairs exception is limited to current directors and shareholders. (*See* Resp. 10–12 (citing *Sudholt*, 2023 WL 4181194, at *8)). In *Sudholt*, the court declined to apply the exception in part because former directors and shareholders were involved. 2023 WL 4181194 at *8. As Plaintiffs point out, however, the Seventh Circuit recently reversed *Sudholt* and, in so doing, specifically rejected this argument. (*See* Notice of Suppl. Authority [ECF No. 20] (citing *Sudholt v. Country Mut. Ins. Co.*, No. 23-2507, 2023 WL 6381375 (7th Cir. Oct. 2, 2023))).

The Court agrees with the Seventh Circuit that there is "no indication that Congress intended for employment status to serve as the gating mechanism for applying CAFA's internal-affairs exception." *Sudholdt*, 2023 WL 6381375, at *5. Indeed, "[i]t is easy to envision claims

against former directors . . . who allegedly looted a company and then resigned or retired. The whole case would be about corporate governance, yet [Defendants] would position such a claim outside of CAFA's internal-affairs exception simply because *former* directors committed fiduciary breaches." *Id.* (alterations added; emphasis in original). This would be an untenable outcome.

*Market impact*. Defendants next argue that the exception cannot apply "because the relief Plaintiffs seek would broadly affect the public market and interstate commerce[.]" (Resp. 13 (alteration added)). The Court agrees with Plaintiffs that this is not a relevant consideration for purposes of applying the internal affairs exception. (*See* Reply 6–9). Under 28 U.S.C. section 1332(d)(9)(B), the Court need only consider whether the claims involve a corporation's internal affairs and whether they arise under the laws of the state in which a corporation is incorporated; there is no directive to consider the relief sought or even whether the claims have an impact beyond a single state. *See id.*

As Plaintiffs note, the Second Circuit has already rejected a similar argument in the context of a different CAFA exception. (*See* Reply 8–9 (citing *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 32 (2d Cir. 2010))). *Greenwich Financial Services* involved an exception for claims "'relate[d] to the rights, duties[,] . . . and obligations relating to or created by or pursuant to any security.'" 603 F.3d at 24 (quoting 28 U.S.C. § 1332(d)(9)(C); alterations in original). The defendants argued that exception did not apply because CAFA's legislative purpose was to extend federal jurisdiction over "class actions of national importance." *Id.* at 32 (quotation marks and citation omitted). The Second Circuit rejected that "this generalized legislative purpose c[ould] override the clear meaning of [CAFA], which plainly allow[s] some large class actions to remain in state court." *Id.* (alterations added).

Reading a "national importance" exception into the internal affairs exception would be no better. As in *Greenwich Financial Services*, such a requirement would impose an "amorphous" requirement too easily evaded "by defendants' self-serving assertion[s.]'" *Id.* (alteration added).[2]

### C. Gamesmanship

Finally, the parties seek to draw the Court's attention to what they perceive as gamesmanship or inappropriate litigation tactics by the other. (*See* Mot. 2, 6; Resp. 16–17). The Court recognizes the unusual procedural history of this case. As described, Plaintiffs initially filed a case in federal court and only filed the same case in state court after the Undersigned dismissed their complaint as a shotgun pleading. *See Benes* Order 1–2; *Benes* Notice 1. Plaintiffs now explain that they realized their class "was composed almost exclusively of Florida citizens[,]" (Mot. 2 (alteration added)); but Defendants suggest this "about-face" was motivated by concerns that "litigating in this Court would present unanticipated obstacles and be fraught with frustration[,]" (Resp. 17 (alteration added)).

For their part, Plaintiffs claim that Defendants adopted a contradictory position when other shareholders initially sought to block the Exchange Transaction. (*See* Mot. 2, 6 (citing *Rasco* MTD 7)). In that case, Defendants denied that federal jurisdiction existed. *Rasco* MTD 7 (alteration added). In their Joint Motion to Dismiss in this case [ECF No. 7], Defendants called the allegations in the two cases "substantially similar[,]" *id.* 4 n.3 (alteration added), although they argue now that the case is "far more than it was when it was originally filed[.]" (Resp. 1 (alteration

---

[2] Neither is the Court swayed by Defendants' description of the Private Equity Funds as out-of-state actors. (*See* Resp. 15–16). These funds are, by Defendants' own description, "shareholders whose actions are critical to Plaintiffs' claims." (*Id.* 16). As fellow shareholders, their involvement in the case falls within the internal affairs exception. *See Edgar*, 457 U.S. at 645 (defining "internal affairs" as "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders"). That they are based out of state and are not parties — regardless of whether Defendants think they should be — does not mean that their involvement was not a matter of internal affairs or that these claims arise under another state's laws.

added; footnote call number omitted)). In any event, Defendants emphasize that their "purported position in prior, distinct litigation bears no substantive relevance to the merits of Plaintiff's Motion[.]" (Resp. 16 (alteration added)).

Defendants are correct, and their own argument fails for the same reason. "Either the internal affairs exception applies . . . or it does not[.]" (Resp. 16 (alterations added)). No party has shown that any alleged gamesmanship has changed the underlying legal requirements of the CAFA exception or prevented the requirements from being satisfied here. *Cf. Kaspers v. Comcast Corp.*, 631 F. App'x 779, 784 (11th Cir. 2015) (holding that the removing party did "not contend that the action did not meet the formal requirements of [CAFA]" and as a result, "ha[d] not shown a basis for reversing . . . on the basis of . . . 'gamesmanship'" (alterations added; citation omitted)). The Court has found that the internal affairs exception applies, and Defendants' gamesmanship arguments are unavailing.

### IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Remand **[ECF No. 13]** is **GRANTED**. The case is **REMANDED** to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

**DONE AND ORDERED** in Miami, Florida, this 24th day of October, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record